IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 14-00284-01-CR-W-DW |
| CURTIS J. HUDSON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Before the court is defendant's motion to suppress evidence on the ground that police had no legal basis to search defendant's vehicle without a warrant. I find that the stop of the vehicle was proper because defendant had invalid temporary tags and the search of the vehicle was based on probable cause to believe marijuana was located inside the vehicle. Therefore, defendant's motion to suppress should be denied.

*I.     BACKGROUND*

On September 24, 2014, defendant was pulled over for having invalid temporary tags on his vehicle. When he rolled down his window, the officer detected the odor of marijuana coming from the vehicle. Defendant was removed from the vehicle and two firearms were observed. Those weapons were recovered, and inside a computer bag on the back seat officers found three bags of marijuana, cocaine, crack cocaine, a digital scale and sandwich bags. Defendant was arrested, and the following day a criminal complaint was filed charging him with possessing firearms after having been convicted of a felony.

On October 7, 2014, an indictment was returned charging defendant with two counts of possessing a firearm after having been convicted of a felony.  Defendant filed the instant motion to suppress on February 18, 2015.  On February 23, 2015, the government filed a response, arguing that because police had probable cause to believe that evidence of a drug crime would be found in defendant's car, no search warrant was necessary.

On March 9, 2015, I held an evidentiary hearing on defendant's motion to suppress.  The government appeared by Assistant United States Attorney Joseph Marquez.  The defendant was present, represented by Willis Toney.  The following witnesses testified:

    1.    Officer Brandon Bray, Kansas City, Missouri, Police Department

    2.    Officer Chad Pfaff, Kansas City, Missouri, Police Department

In addition, the following exhibits were admitted:

| | |
|---|---|
| P. Ex. 1 | Photograph of Tahoe with temporary tag |
| P. Ex. 3 | Photograph of floor of car and butt of gun |
| P. Ex. 4 | Photograph of gun with strap |
| P. Ex. 5 | Photograph of black bag in back seat |
| P. Ex. 6 | Photograph of three baggies and a box |
| P. Ex. 7 | Photograph of four baggies, gun, clip and ammunition |
| P. Ex. 8 | Photograph of gun with strap, long slip and ammunition |
| D. Ex. 1 | DVD of incident |

On March 11, 2015, defendant filed supplemental suggestions in support of his motion to suppress.  He included an article titled, "Marijuana Odor Perception:  Studies

Modeled From Probable Cause Cases". An amended reply was filed the same day without the article.

## II.    EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1. The Violent Crimes Enforcement Unit of the Kansas City, Missouri, Police Department targets violent areas of the city and performs proactive patrol in those areas looking for stolen automobiles, weapons violations, and narcotics sales (Tr. at 3-4). Officer Brandon Bray, a member of the Violent Crimes Enforcement Unit, was on patrol at approximately 5:30 p.m., on September 24, 2014 (Tr. at 4). He was in the area of Linwood and Indiana when he observed a black Chevy Tahoe drive by (Tr. at 4).

2. The Tahoe had temporary tags from Kansas (Tr. at 4, 17; P. Ex. 1). Officer Bray was aware that temporary tags are often placed on stolen automobiles; therefore, he conducted a computer check to see if there were any stolen vehicles matching the description of the one he had just observed (Tr. at 5). Officer Bray sees numerous vehicles each day bearing temporary tags, and he checks to verify most of them (Tr. at 17). He runs the temporary tag number through the REJIS system and it tells him whether the tag is valid or expired, or it does not show up which means it is fake (Tr. at 18). The REJIS system works with Kansas temporary tags as well as Missouri temporary tags (Tr. at 18).

3. The "hot sheet" is a list of vehicles that were reported stolen during the past 30 days (Tr. at 5-6). A 1999 black Chevy Tahoe was listed on the hot sheet (Tr. at

3

5, 6). Officer Bray used the computer in his patrol car to run the temporary tag that was on the Tahoe he encountered and it came back as having been issued to a Ford Escape (Tr. at 6, 7, 18). Officer Bray decided to stop the car for having illegal temporary tags (Tr. at 7).

4. Officer Bray pulled the car over in front of 3841 College (Tr. at 7). When Officer Bray approached the car, the driver (defendant) rolled down the window and handed the officer a state identification car (Tr. at 7). Immediately after the window had been rolled down, Officer Bray detected the odor of marijuana emanating from the car (Tr. at 7, 19, 26).

5. As a result of his experience during eight years as a police officer, Officer Bray can identify the odor of marijuana (Tr. at 20, 44). He has come in contact with raw marijuana numerous times (from 100 to 200 times) during his eight-year career (Tr. at 44). He has encountered burnt marijuana more times than raw marijuana (Tr. at 45). He encounters marijuana almost daily (Tr. at 44). He could tell the odor was coming from the inside of the car, but he could not tell specifically from where in the car the odor was coming (Tr. at 20). The odor was of green marijuana, not burnt marijuana (Tr. at 20-21, 50). He went back to his patrol car and requested a second car for officer safety since he was alone (Tr. at 7, 32). The second vehicle, with Officers Pfaff and Watt, arrived about three minutes later (Tr. at 8, 32).

6. Officer Bray told the other officers that he had smelled the odor of marijuana coming from the car (Tr. at 8). When the officers went to the Tahoe to ask defendant to get out, Officer Bray again smelled the odor of marijuana coming from the car, and Officer Pfaff smelled it as well (Tr. at 8, 53, 57, 65). Officer Pfaff smelled

4

green marijuana but not burnt marijuana and could tell it was coming from somewhere inside the car (Tr. at 66). He could not tell from where in the car the marijuana odor was coming (Tr. at 67). Officer Pfaff had eight years of experience with the Kansas City police department and estimated that he had smelled raw marijuana around 200 times and had smelled burnt marijuana around 200 times (Tr. at 69). Raw marijuana and burnt marijuana have different odors (Tr. at 69).

7. Defendant was escorted out of the car, patted down for weapons, and taken to the area behind his vehicle and in front of the patrol car where he waited with Officer Watt (Tr. at 8, 9, 10, 11). Officer Bray asked defendant if there were any weapons in the vehicle, and defendant said he did not believe so (Tr. at 11).

8. Defendant appeared to Officer Bray to be nervous -- defendant kept looking around at what the officers were doing and asking why they were going back to his car (Tr. at 10). Officer Bray told defendant that he had smelled marijuana coming from defendant's car (Tr. at 10).

9. Officer Bray went to the passenger side of the Tahoe and opened the door (Tr. at 11). He looked inside the car toward the glove compartment (Tr. at 11). Officer Pfaff was at the driver's side of the car, and the driver's door was still open from when defendant had exited the car (Tr. at 11, 66). Officer Bray did not observe anything illegal in the Tahoe at that time (Tr. at 11). Officer Pfaff, however, observed a gun underneath the driver's seat just by looking inside the car (Tr. at 12, 41, 53, 57, 66). He saw the gun when he was looking for marijuana (Tr. at 37, 46, 57). Officer Pfaff announced to Officer Bray that a gun was in the car (Tr. at 57).

5

10. While all of this was occurring, people inside the house at 3841 College began coming out of the house (Tr. at 12). Those people were related to defendant and were approaching the officers (Tr. at 12). They were told to stand back (Tr. at 12).

11. Because of the gun, the bystanders and the fact that defendant was larger than any of the officers present and was being watched by only one officer, Officer Bray walked back to the patrol car and put handcuffs on defendant for officer safety until the weapon was secured (Tr. at 12, 40, 45-46, 47).

12. Officer Pfaff put latex gloves on and took photographs of the gun in place (Tr. at 12, 13, 57-58, 67). When he leaned down to get a better photo of the firearm, he observed underneath the back passenger seat in the middle of the vehicle the barrel of another firearm (Tr. at 58). Officer Pfaff photographed both guns and a black computer bag on the back seat of the car before anything was moved (Tr. at 58). The first weapon, a .40 caliber, was then secured (Tr. at 12, 13). The officers noticed that the serial number had been filed off the gun (Tr. at 12).

13. Officers Pfaff and Bray went back to the patrol car and Officer Bray asked defendant if he was a felon and he responded that he was (Tr. at 12, 37). Officer Pfaff returned to the Tahoe and observed the second weapon "sitting in the middle behind the center console" (Tr. at 13, 41). Officer Bray observed that weapon as well before Officer Pfaff recovered it (Tr. at 13). This one was a 9mm (Tr. at 13, 42). They were unable to make it safe -- they could not get the bullet out of the chamber -- and it had to be transported to the crime lab to be cleared (Tr. at 13, 42, 59).

14. In the center of the back seat was a black computer bag (Tr. at 13; P. Ex. 5). The bag was within the reach of someone in the driver's seat (Tr. at 45, 58). Officer

6

Pfaff opened the bag and immediately smelled marijuana (Tr. at 14, 59). Inside the computer bag was a large clear plastic bag containing marijuana (Tr. at 14; P. Ex. 6). It was inside a Ziploc bag which was inside another bag (Tr. at 24, 25). Despite being inside these bags, the marijuana odor was still detectable (Tr. at 45, 66). The officers removed the bag of marijuana from the computer bag and observed several other bags containing contraband (Tr. at 15). The computer bag contained three bags of marijuana, a bag of cocaine, a bag of crack cocaine, a digital scale, and sandwich bags (Tr. at 60). Officer Bray contacted Detective Mattivi from the Career Criminal unit and also contacted the Robbery unit to verify that defendant was a convicted felon (Tr. at 15, 39). That fact was confirmed (Tr. at 15, 39). Defendant was then officially arrested for possessing marijuana and for possessing a firearm after having been convicted of a felony (Tr. at 16). Defendant was also cited for having invalid temporary license tags (Tr. at 16).

15. Officer Bray does not print off computer verifications of temporary tags performed in his patrol car (Tr. at 18). Officer Bray does not normally arrest someone for a temporary tag violation (Tr. at 19).

16. Defense counsel proposed that the area around the gun on the floor of the car was molded, and Officer Bray testified that, "It appears so from the picture." (Tr. at 22). However, Officer Bray did not believe that the car had mold in it after comparing that picture to another picture that was taken of the interior (Tr. at 43). He believed the white coloring was the effect of the camera's flash and that the picture was actually showing carpeting (Tr. at 47). Although Officer Bray is familiar with the odor of mold, he did not notice an odor of mold coming from the car (Tr. at 22-23). He did not see any

7

mold in the car while he was searching it (Tr. at 49). No other police officer who was present that day mentioned having seen mold in the Tahoe (Tr. at 49). Officer Bray did not perceive, see, smell or touch any moisture inside the Tahoe that day while he was searching it (Tr. at 49). No other police officer mentioned having observed any moisture inside the car that day (Tr. at 50).

17. Officer Pfaff did not observe any moisture inside the Tahoe (Tr. at 64, 68). He was the one who took the photographs of the car's interior, and he observed the white material on the floor to be cigarette ashes and rocks (Tr. at 64). He did not observe any mold inside the car (Tr. at 68). Officer Pfaff did not smell any mold or any other odors in the car other than marijuana (Tr. at 65).

18. Officer Bray could have gotten a search warrant, but he has never done that under these circumstances and that would be the responsibility of a detective (Tr. at 38). No one asked defendant for consent to search the car (Tr. at 38).

### *III. STOP*

A traffic stop is considered a seizure for Fourth Amendment purposes. United States v. Guevara, 731 F.3d 824, 828 (8th Cir. 2013); cert. denied, 134 S. Ct. 1346 (2014); United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001) (citing Delaware v. Prouse, 440 U.S. 648, 653 (1979)). In order to justify the seizure, the stop must be "supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." United States v. Guevara, 731 F.3d at 828 (quoting United States v. Washington, 455 F.3d 824, 826 (8th Cir. 2006)).

If an officer sees an invalid temporary license tag on a car, reasonable suspicion to stop that car exists. United States v. Givens, 763 F.3d 987, 990-991 (8th Cir. 2014),

8

cert. denied, -- S. Ct. --, 2015 WL 852531 (March 2, 2015); United States v. Mendoza, 691 F.3d 954, 959-960 (8th Cir. 2012), cert. denied, 133 S. Ct. 965 (2013). In this case, Officer Bray learned from checking the temporary tag through the REJIS system that it was registered to a Ford Escape, not a Chevy Tahoe. Therefore, the stop of defendant's car was lawful.

## *IV.    SEARCH OF THE CAR*

Police officers may "conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." United States v. Farnell, 701 F.3d 256, 264 (8th Cir. 2012) (quoting United States v. Kennedy, 427 F.3d 1136, 1140-1141 (8th Cir. 2005)). "Probable cause exists where there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Donnelly, 475 F.3d 946, 954 (8th Cir. 2007) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

In United States v. Davis, 569 F.3d 813, 817 (8th Cir. 2009), the court of appeals held that officers properly searched the interior of the car after the officer smelled the odor of marijuana coming from the car and, during a pat-down search of the driver, discovered a bag of marijuana in his pocket. In United States v. Nheumann, 183 F.3d 753, 756 (8th Cir. 1999), the court held that after officers smelled the odor of marijuana coming from the car, there existed a reasonable probability that marijuana was located inside the vehicle and the officers "had probable cause to search the entire vehicle for illegal drugs." In United States v. Brown, 634 F.3d 435, 438 (8th Cir. 2011), officers detected the odor of marijuana emanating from the vehicle which provided a

9

"reasonable probability marijuana was located inside the vehicle and the officers had probable cause to search the entire vehicle for illegal drugs."

Defendant argues strenuously that the officers could not have detected the odor of marijuana because (1) the marijuana was inside a sealed Ziploc bag which was inside another bag and inside the computer bag, and (2) because there was mold in the car which presumably would have masked the odor of marijuana. This argument is without merit.

The uncontradicted testimony of Officer Bray and Officer Pfaff was that the odor of marijuana could be detected from outside the vehicle. There is no basis to discredit the testimony of either officer. The testimony of the officers was consistent with each other and was also corroborated by the dashcam video. With no inconsistencies in the record and no contradictory evidence, there is no basis for defendant's argument that the odor of marijuana could not be detected.

Additionally, there is no evidence that there was mold inside the car or that any odor of mold could be detected by anyone at the scene. Despite what one of the exhibits may look like, both officers testified that there was no mold inside the car and that there was no moisture inside the car when they searched it. Officer Pfaff took the photographs and identified the "white area" as cigarette ash and rocks, not mold as suggested by defendant.

## V. CONCLUSION

Based on all of the above, I find that (1) the initial stop of defendant was proper since the car had an invalid temporary license tag, and (2) the search of the car was

10

proper because police had probable cause to believe that marijuana would be found inside the car.

It is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to suppress.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has 14 days from the date of this report and recommendation to file and serve specific objections.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
March 16, 2015